Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA


DONNA ROWELL,

      Plaintiff,

   vs.

THE KROGER CO.,
An Ohio for Profit Corporation,

     Defendant.

CASE NO.:
1:15-cv-00856-RWS

_____


30(b)(6) DEPOSITION OF THE KROGER, CO.
MIKE SMITH



March 10, 2016
3:58 p.m.



166 North Finley Street
Athens, Georgia



Alison M. Wyman, CCR-2529, RPR



Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 2

1    APPEARANCES OF COUNSEL:

2    For the Plaintiff:        JAMES M. LOREN
                               Attorney at Law
3                              Loren Law Group
                               100 South Pine Island Road
4                              Suite 132
                               Plantation, Florida  33324
5                              (678) 224-5702
                               (954) 585-4886 (Fax)
6                              jloren@lorenlaw.com

7    For the Defendant:        CANDIS R. JONES
                               Attorney at Law
8                              Gray, Rust, St. Amand, Moffett &
                               Brieske, LLP
9                              950 East Paces Ferry Road
                               1700 Atlanta Plaza
10                             Atlanta, Georgia  30326
                               (404) 870-7373
11                             (404) 870-7374 (Fax)
                               cjones@grsmb.com

12

13                            -   -   -   -   -

14

15

16

17

18

19

20

21

22

23

24

25

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 3

```
 1                          INDEX
     MIKE SMITH                                    PAGE
 2
     CROSS-EXAMINATION
 3        By Mr. Loren                               4

 4

 5                    -   -   -   -   -

 6

 7                  INDEX TO EXHIBITS

 8   PLAINTIFF'S          DESCRIPTION            PAGE

 9   Exhibit 2        Still image from security
                      camera                       11
10

11
     (Original Exhibit 2 has been attached to the original
12   transcript of Kelley Minish taken on 3/10/2016.  A
     copy is attached hereto.)
13

14                    -   -   -   -   -
15

16

17

18

19

20

21

22

23

24

25
```

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 4

1                    MIKE SMITH,

2   being first duly sworn, was deposed and testified as

3   follows:

4                  CROSS-EXAMINATION

5   BY MR. LOREN:

6        Q.    Mr. Smith, good afternoon.  How are you?

7        A.    Good.  And yourself?

8        Q.    Good, sir.  My name is James Loren.  We're

9   on a Donna Rowell vs. The Kroger Company matter.  It's

10  a case pending here in the United States District

11  Court for the Northern District of Georgia regarding a

12  slip and fall accident that occurred back on or about

13  April 30th, 2014.  And I'm here to ask you some

14  questions about it.

15            Just briefly, can you give me your full

16  name?

17       A.    Michael Albert Smith.

18       Q.    Okay, Mr. Smith.  And my understanding is

19  that you work for Kroger corporation?

20       A.    That's correct.

21       Q.    And what position?

22       A.    Co-manager.

23       Q.    For how long have you worked for them?

24       A.    Thirteen years.

25       Q.    And what store are you at?

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 5

1      A.    Store No. 618 on Highway 29.  It's a

2  brand-new store.  Well, a year and a half old.

3      Q.    A year and a half old.  How long have you

4  been there specifically at that store?

5      A.    Since June of 2014.

6      Q.    Got it.  All right.  So it's my

7  understanding you were at the College Park store?

8      A.    College Station.

9      Q.    College Station, excuse me --

10     A.    Yes.

11     Q.    -- store on April 30th, 2014.  Am I correct?

12     A.    That would be correct.

13     Q.    How long were you there for?

14     A.    Approximately two and a half years.

15     Q.    And the position you had back then was what

16  position?

17     A.    Co-manager.

18     Q.    Co-manager as well.  Now, when you're saying

19  "co-manager," is that the same position as Mr. Kelley

20  Minish or a different position?

21     A.    No, he would be the unit or store manager.

22  I'm -- a co-manager is basically an assistant manager.

23     Q.    Got it.  All right.  And what does an

24  assistant manager do?

25     A.    Oversees different departments, whatever

Page 6

1  departments he's assigned.  Like, over the front end.

2      Q.    All right.  Did you have any sort of

3  involvement in maintaining store safety?

4      A.    I was the safety champion.

5      Q.    I'm sorry, safety what?

6      A.    Champion.

7      Q.    Okay.  Can you tell me what that means?

8      A.    It means I oversee, make sure that the store

9  is holding period meetings.  Which, you know, I don't

10  know if you know.  A period is every four weeks and we

11  have 13 periods every year.

12          We have different safety topics that we put

13  out.  We have a safety team, we do observations,

14  and -- as far as counseling or congratulating people

15  on doing safe or unsafe facts.

16      Q.    All right.  Now, overall maintaining the

17  safety of the operation of the store, is that also

18  part of your job responsibility or only the training

19  aspect of it?

20      A.    A little of both.  Training, primarily.

21      Q.    All right.  Now, let me ask you this:  Are

22  you aware of an accident that took place on or about

23  April 30th, 2014, involving a lady named Donna Rowell?

24      A.    Yes.

25      Q.    Okay.  Can you tell me what you know about



1   this accident?

2       A.   Well, I wasn't present or responded to the

3   accident.  I know she slipped and fell on the frozen,

4   slash, dairy aisle.

5       Q.   And how did you learn about that?

6       A.   Through another manager, either Mr. Minish

7   or Mr. Gates, Mike Gates.

8       Q.   Okay.  So let me just clarify.  Did

9   Mr. Minish let you know about that?

10      A.   I can't remember who.  I don't recall.

11      Q.   Or it could have been either Mike Gates?

12      A.   Right.

13      Q.   So either of the two.  Got it.  All right.

14  And can you tell me the circumstances surrounding them

15  letting you know about this slip and fall?

16      A.   Well, when an accident report is filed, I

17  file it away in the filing cabinet.  When it's

18  entered, you know, I file it away in the filing

19  cabinet and discuss it during our safety meetings.

20      Q.   All right.  You discussed that specific

21  incident during a safety meeting?

22      A.   Yeah, we always get a printout of what

23  accidents happened the period before, in case there's

24  a new person that comes on.  And then discuss what

25  happened.

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 8

1        Q.     Can you tell me what specifically was

2   discussed about that accident in the safety meeting?

3        A.     We just covered what -- what happened, that

4   it was a slip and fall on the dairy, slash, frozen

5   aisle.  Apparently, there was a wet -- wet surface

6   and...

7        Q.     Do you know what caused that wet surface?

8        A.     Leaking freezer cases.

9        Q.     Okay.  And who was present during the safety

10  meeting?

11       A.     I can't recall.

12       Q.     Is Mr. Minish typically present at these

13  safety meetings?

14       A.     Sometime he would be, but I don't recall if

15  he was at that.

16       Q.     How about Mr. Gates?  Is he present during

17  these safety meetings?

18       A.     No.  Let me -- let me clarify something I

19  just remembered.  The few months prior to the -- me

20  leaving, getting transferred, I was not over the

21  safety team.  I just -- I was for a long period of

22  time.  But Leslee Smith would have been.  I just

23  thought of that.

24       Q.     Okay.

25       A.     And it's spelled L-E-S-L-E-E.

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 9

1    Q.    Okay.  What -- is that a male?

2    A.    It's a female.

3    Q.    Female.  And what is -- what was Leslee

4  Smith's position?

5    A.    Co-manager as well.

6    Q.    Co-manager as well.  And do you know what

7  store she's at now?

8    A.    618.  The same store that I am.

9    Q.    Okay.  And did she -- were you involved in

10  any meetings, safety meetings, regarding this

11  particular slip and fall?

12    A.    If -- since I wasn't over the safety team, I

13  wouldn't -- wouldn't be.

14    Q.    Well, how did you know that there was a slip

15  and fall involving Ms. Rowell in the freezer cases?

16    A.    Mr. Gates and Mr. Minish.

17    Q.    And what were the circumstance surrounding

18  them telling you about it?

19    A.    Well, still, a lot of times, since I was the

20  most knowledgeable on it, I would file and actually

21  submit it in to Sedgwick office, or scan it.  Well,

22  actually, fax it in at that time.

23    Q.    Okay.  The accident report?

24    A.    Yes.

25    Q.    All right.  Did you have any job

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 10

1  responsibilities in preserving the video that

2  accompanied that accident report?

3      A.   Not that particular one.

4      Q.   Who would have been responsible for that?

5      A.   Generally, it's the manager that -- that

6  submits the report.  But I don't know -- I couldn't

7  tell you -- I did a lot of them.  I couldn't tell you

8  if I did that particular one.

9      Q.   All right.  Now, let me ask you this.

10  Typically, the policy of this particular -- the

11  College Station store, if there's a slip and fall,

12  there's a policy that the video be preserved.  Am I

13  correct?

14      A.   Correct.

15      Q.   Okay.  How much of that video would be

16  preserved?

17      A.   An hour before and an hour after.

18      Q.   All right.  And whoever does the preserving,

19  whether it's yourself or Mr. Minish, would it be fair

20  to say that they have to make sure that the footage,

21  in fact, depicts the actual accident?  Is that

22  correct?

23      A.   If the cameras do capture it.

24      Q.   Okay.  You're familiar with the camera

25  system in the store, correct?

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 11

1    A.    Yes.

2    Q.    All right.  And just to keep uniformity of

3  exhibits, I'm going to direct you to what's been

4  previously marked Exhibit No. 2 in the previous

5  deposition.  I'm going to similarly mark it as Exhibit

6  2 for this deposition.  This is a clean copy of

7  Exhibit No. 2 and so forth.

8         Do you know -- have you seen this type of

9  camera angle within that store before?

10   A.    Oh, yes.  Yes.

11   Q.    Okay.  Can you tell me, what does Exhibit 2

12  depict?

13   A.    The -- the right-hand side has the dairy

14  cases and the left-hand side has frozen, ice cream,

15  and novelty ice cream.

16   Q.    Okay.  Now, would it be fair to say that --

17  based on your experience, that if someone's walking

18  anyplace in -- where you see Aisle 19 here in Exhibit

19  No. 2, that the camera shows them?  Is that a fair

20  statement?

21   A.    Yes.  It gets kind of burry toward the front

22  of the store 'cause that's taken from the back of the

23  store.

24   Q.    Okay.  It gets blurry; but, nonetheless, you

25  can see an image of a person walking around, correct?



Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 12

1    A.   Right, correct.

2    Q.   Okay.  Now, in terms of an obligation of a

3  manager who preserves video, is it policy that they

4  cue up the video on the digital system and look for

5  the slip and fall to make sure they have an hour

6  before and an hour afterwards?

7    A.   Correct.

8    Q.   And what happens if a manager fails to do

9  that?  Are there any sort of repercussions for them

10  failing to cue that up and preserve the proper video?

11       MS. JONES:  Objection.

12    Q.  (By Mr. Loren)  You can answer.

13    A.   There -- there are no repercussions.

14  Generally, we get a reminder from Sedgwick to send

15  them a copy.

16    Q.   Okay.  So if you forget to send the video or

17  send them something that's not correct, they'll,

18  nonetheless, call you to make sure you get the video,

19  correct?

20    A.   Call or email.

21    Q.   All right.  How long is a video preserved

22  for, where you have...

23    A.   On that particular system, I don't recall.

24  It's a different, what I -- than what I work with now.

25  On my current one, it's 30 days.

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

1     Q.    Okay.  Now, let me ask you this.  Does the

2  number 45 at all ring a bell as it relates to that

3  other system?

4     A.    I don't -- no.  No.

5     Q.    Okay.

6     A.    I don't recall whether it's 45 or less.

7     Q.    Okay.  Well, let me ask you this.  Would the

8  old system at least preserve 15 days of video?

9     A.    Yes, sir.

10     Q.    Okay.  Would the old system preserve at

11  least 30 days of video?

12     A.    I don't know.  It's a pretty old system, so

13  I don't know.

14     Q.    But 15 for sure?

15     A.    Yes.

16     Q.    Okay.  And how many times have you gotten

17  calls from Sedgwick, or whoever it may be, saying, "By

18  the way, the video is either missing or you don't have

19  the right footage"?  How often does that happen?

20     A.    Generally, they don't send one on the

21  footage 'cause -- I can't remember the number of

22  cameras that are there.  But we were asked to get an

23  hour before and an hour after on each camera.

24     Q.    Okay.  In order to preserve an hour before

25  and an hour after, each camera -- is that like a

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 14

1  pretty easy task, 'cause you just program it to do it

2  and it preserves it automatically?  How does that

3  work?

4       A.   I mean, it's -- you program it and push

5  record.  Or whatever the command is.

6       Q.   Had you ever met Ms. Donna Rowell?

7       A.   Yes.

8       Q.   When did you meet her?

9       A.   For a while, she was a shopper at 618.

10      Q.   Okay.  Any problems with Ms. Rowell?

11      A.   None that I can recall.

12      Q.   Okay.  And -- but I don't go by the numbers,

13  just so -- 618 is your current store?

14      A.   Yes.

15      Q.   Okay.

16      A.   I'll put -- say "Highway 29" going forward.

17      Q.   Okay.  So the College Station store where

18  the slip and fall occurred, did you know her from

19  there as well?

20      A.   I don't recall if I knew her or not.

21      Q.   Okay.  What do you know about this

22  particular slip and fall accident, based on personal

23  knowledge or discussions with the managers?

24      A.   Just know she fell -- said she fell on a

25  substance.  I mean, I know we had issues with the

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 15

1  cases.  I don't know if that contributed to it.  And

2  they said that there were cones down.

3      Q.   Who told you that?

4      A.   Whoever --

5           MS. JONES:  Objection.  Asked and answered.

6      Q.   (By Mr. Loren)  How long had you been having

7  problems over there with the cases leaking?

8      A.   I don't recall exactly how long, but...

9      Q.   What would the store do in order to protect

10  the customers from not slipping from the, I guess,

11  leaking or condensation from these cases?

12     A.   Well, wherever the leak was coming from, we

13  put down a sock.  It's a tube-like object that would

14  soak up the water.  And put down safety cones.  And...

15     Q.   How big was the sock?

16     A.   It's about 5 to 6 feet long.  Or 4 to 5 feet

17  long.

18     Q.   And does the sock stop the leaking?

19     A.   It doesn't stop the leaking.  It soaks up

20  the water.

21     Q.   Let me rephrase the question.  If there is

22  leaking, does it soak up the water so it doesn't

23  protrude out into the walk areas?

24     A.   If water comes in contact with it, it soaks

25  it up.

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 16

1    Q.    Okay.  So that area outside the area of the
2  sock will not be wet if the sock is placed against the
3  leaking area, correct?
4    A.    If it -- if the water comes in contact.  If
5  it goes up under the tile, then it's not coming in
6  contact, so -- and to my knowledge, that's what was
7  happening, it was going under the tile and out into
8  the floor.
9    Q.    Even with a sock there?
10    A.    Yes, 'cause the water is not coming in
11  contact with it.
12    Q.    Was there any discussion had about blocking
13  that area off completely because you couldn't get the
14  cases under control?
15    A.    No.
16    Q.    Can I ask you why?
17    A.    I don't know why there was no discussion,
18  no.  I guess it would limit the access to the product.
19    Q.    Well, let me ask you this.  Did you make a
20  recommendation to them that they needed to block off
21  that area because the cases continued to leak?
22        MS. JONES:  Objection.
23    A.    I did not.
24        MS. JONES:  You can answer.
25    A.    I did not.

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 17

1        Q.    (By Mr. Loren)   Now, if -- can I ask you

2   this?   'Cause if the water continues to go under the

3   tile and the socks don't stop it and the cones are

4   placed, why -- why would people be allowed to continue

5   walking in that area?

6              MS. JONES:   Objection.

7        A.    Because the water was not always present.   I

8   guess -- like I said, the water was not always

9   present, so...

10       Q.    (By Mr. Loren)   Okay.  So what was the

11  expectation with respect to customers?   That the

12  customers, basically, would go ahead and walk there,

13  trying to get the ice cream out, at their own peril?

14             MS. JONES:   Objection.

15       A.    Well, if they saw -- we put the signs out so

16  they are visible.   And then they need to proceed with

17  caution.   'Cause that's what -- it doesn't say "Do not

18  enter."   It says "Use caution."

19       Q.    (By Mr. Loren)   Is there any particular

20  reason why that area couldn't be -- I guess, how many

21  of those cases were leaking like this?

22       A.    I don't recall.  We had issues -- I don't

23  recall.   One or two doors.  I don't recall exactly how

24  many.

25       Q.    Was it something that was going on for

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 18

```
 1  months at a time?
 2      A.   I would -- I don't know how many months,
 3  but -- I don't recall how long it was.
 4      Q.   Well, again, I don't want you to guess at
 5  anything that's not a reasonable estimate.  But was it
 6  a day?  A month?  Two weeks?  I mean, was it weeks or
 7  was it months that this was going on?
 8      A.   At least a month.  I couldn't be -- tell you
 9  how long before.
10      Q.   Okay.  The water that would go underneath
11  the tile --
12      A.   Uh-huh.
13      Q.   -- would the people be able to see that
14  there's water that's underneath the tile?
15      A.   Not unless enough water had gathered and
16  someone stepped on it and it came out.
17      Q.   So the area specifically that the water was
18  emanating from, it's a possibility that the cones are
19  not covering that area.  Is that a fair statement?
20      A.   That's correct.
21      Q.   Did you -- were you working the day when the
22  slip and fall occurred?
23      A.   I don't -- I don't recall.  I don't recall.
24      Q.   Do you know if -- did anybody tell -- like
25  Mr. Minish or Mr. Gates, did they tell you anything
```

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 19

1  about Ms. Rowell moving the cones?

2      A.   The only thing that Mr. Minish told me was

3  she hit the cone.

4      Q.   Who --

5      A.   With the cart.

6      Q.   Okay.  Who hit the cone with the cart?

7      A.   The -- the customer, Ms. Rowell.

8      Q.   Okay.  And let me ask you -- again, based on

9  your knowledge of how this surveillance system worked,

10 if she was walking in Aisle 19, which is in Exhibit 2

11 right here, with a cart, that's something that should

12 have been at least visible here.  Is that a fair

13 statement?

14     A.   As the camera gets father away from the back

15 of the store, it's hard to tell any -- any figures,

16 any -- by this -- no, I don't recall.  I've -- I

17 hadn't -- like I said, I hadn't seen it in over --

18 almost two years.

19     Q.   I got it.  Well, let me ask you this.  The

20 photograph here, which was marked in the previous

21 deposition of Mr. Minish, do you see where it's marked

22 with a little circle and the letter A next to it and

23 stuff?

24     A.   Yes.

25     Q.   Okay.  If you had somebody with a cart in



Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 20

1   that particular area, is that something that you would

2   have been able to see with the way this camera was set

3   up?

4           MS. JONES: Objection. Asked and answered.

5       Q. (By Mr. Loren) I'm talking about the letter

6   A.

7       A. I see letter A. It's hard to tell at

8   that -- you'd have to know if someone was in there.

9   Because in the background -- they could get lost in

10   the background. So I couldn't answer that.

11       Q. Now, you have other cameras in the store as

12   well besides Aisle 19, correct?

13       A. Correct.

14       Q. So if you had a person walking in Aisle 18

15   with a shopping cart, you should have been able to see

16   them as well, correct?

17       A. On Aisle 18?

18       Q. Yes, sir. That's the aisle -- that's the

19   next -- next aisle over.

20       A. No, you can't -- you can't -- by this --

21       Q. Not -- not that camera. I'm talking about

22   is there another camera that's --

23       A. I don't recall.

24       Q. Okay.

25       A. I don't recall.

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 21

1      Q.   Do you know where the cameras are typically

2  situated?  I mean, does every aisle have a camera,

3  typically, in these stores?

4           MS. JONES:  Objection to form.

5      A.   I don't -- I don't know.  I don't believe --

6  no, every aisle does not.  I don't know if every

7  frozen aisle has it or not.  I don't recall.

8      Q.   (By Mr. Loren)  All right.  Do you know how

9  long it took to get that leaking under control on that

10  particular -- on those cases?

11      A.   No, I don't.  I don't recall if it was

12  repaired before or after I transferred out.

13      Q.   The accident report that's completed, do you

14  know who completed the accident report in this

15  particular case?

16      A.   If I'm not mistaken, it was Mike Gates.

17      Q.   Were you involved in also reviewing that

18  accident report?

19      A.   No.

20      Q.   Can you tell me what the policy is to what's

21  supposed to go into these accident reports?

22      A.   Information about the customer as far as

23  name, address, phone number, a physical description,

24  what they were wearing, and what happened.

25      Q.   All right.  So if you have like a -- would

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 22

1  you agree with me that a fact such as a customer

2  pushed a cone -- a safety cone or a warning cone out

3  of the way, that's an important fact?

4          MS. JONES:  Objection.

5      A.   I guess.  I don't -- I don't truly know.

6  Now, I don't know if that was relayed to Mr. Gates or

7  not.  I don't -- I don't know if that was.

8      Q.   (By Mr. Loren)  Well, if that was, that's

9  something that should have appeared in the report?

10         MS. JONES:  Objection.

11     A.   I have never put anything down.  They just

12  ask if the -- if a cone was present.

13     Q.   (By Mr. Loren)  All right.  If -- based on

14  your experience and the protocols and the way they

15  taught you to fill these reports out, if a customer

16  did something to hurt themselves, by accident or

17  otherwise, is that something you're supposed to write

18  down?

19         MS. JONES:  Objection.

20     A.   Unless I know for a fact that that happened,

21  I could not put that in the report.  Because that --

22  that's my opinion and not actual facts, and they only

23  want us to put facts down there.

24     Q.   (By Mr. Loren)  Okay.  What's the procedure

25  if someone's actually hurt in the store?  Does someone

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 23

1  call the ambulance or suggest that the ambulance be

2  called?

3       A.    No, we don't suggest it.   If the customer

4  requests it, we'll inform them that it's a request by

5  them.   "We're not taking liability on it, but we will

6  call for you."

7       Q.    Have you spoken to anybody else besides

8  Mr. Minish regarding this specific incident?

9       A.    No.   If I did when it happened, I don't

10 recall.

11      Q.    Okay.   So just to make sure.   So, Mike

12 Gates, do you recall speaking to him at all?

13      A.    I don't recall if I did or not.

14      Q.    Okay.

15      A.    I mean, he may have been the one that told

16 me or if -- that would be the only other person I

17 would have talked to.

18      Q.    Okay.   How about Ms. Turner?   Would you have

19 spoken to her at all about this incident?   Barbara

20 Turner.

21      A.    Barbara Turner.   I don't -- I don't recall

22 speaking with her.   I don't.

23      Q.    All right.   Any associates --

24      A.    And it's a possibility that I did, because

25 she was -- you know, she was the one who first

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 24

1   notified, if I'm -- if I'm not mistaken.

2       Q.   And how would you know she first notified --
3   was notify -- was the first one notified?  Sorry.

4       A.   From the accident report.

5       Q.   Did you, yourself, go out and see if there
6   was any leaking water in that case on the day of the
7   slip and fall?

8       A.   I don't even know if I was there or not.  I
9   don't recall.  And chances are I was not there because
10  Mr. Minish would generally ask me to -- to write the
11  report.  So it's my -- I don't know for sure, but -- I
12  don't know if I was there or not, or if I was tied up.

13      Q.   Is there a policy that there are photographs
14  to be taken by the manager who's in charge at the time
15  of the surrounding scene?

16      A.   I have been informed of it as -- this year
17  at a safety meeting, that we're supposed to -- on
18  every one we're supposed to take pictures.  My
19  understanding at that time, we were just required to
20  take video.

21      Q.   Surveillance video?

22      A.   Yes.

23      Q.   All right.  Although that was the only
24  requirement about surveillance video back then, was
25  there a typical practice of actually photographs being

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 25

1  taken back then?

2    A.   Not -- not -- not in all cases.  If we

3  thought that it was something suspicious, then I know

4  we would for a fact.  But I don't know if any were

5  taken of that or not.

6    Q.   **All right.  So the assumption is if there's**

7  **no photographs taken, then there's nothing suspicious.**

8  **Is that a fair statement?**

9        MS. JONES:  Objection.

10    A.   It just depends.  A lot of times it depends

11  on the managers and their opinion.  Like I said, I

12  don't know if one was taken on that.

13    Q.   **(By Mr. Loren)  Is there any other**

14  **information that you have regarding this particular**

15  **case that you find is important regarding how this**

16  **incident occurred?**

17        MS. JONES:  Objection to form.

18    A.   No.

19        MR. LOREN:  I have no further questions.

20        MS. JONES:  I don't have any questions for

21    you, Mr. Smith.

22        THE WITNESS:  All right.  Thank you.

23        MS. JONES:  We're going to read and sign.

24    And eTran for all of mine.

25        (The deposition was concluded at 4:23 p.m.



Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 26

1    Pursuant to Rule 30(e) of the Federal Rules of

2    Civil Procedure and/or O.C.G.A. 9-11-30(e),

3    signature of the witness has been reserved.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 27

1  STATE OF GEORGIA

2  COUNTY OF GWINNETT:

3

4        I hereby certify that the foregoing

5  transcript was reported, as stated in the caption, and

6  the questions and the answers thereto were reduced to

7  typewriting under my direction; that the foregoing

8  pages represent a true, complete, and correct

9  transcript of the evidence given upon said hearing,

10  and I further certify that I am not of kin or counsel

11  to the parties in the case; am not in the employ of

12  counsel for any of said parties; nor am I in any way

13  interested in the result of said case.

14        This the 6th of May, 2016.

15

16

17

18

19

20

21

22        Alison M. Wyman, CCR-2529, RPR

23

24

25

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 28

1             DISCLOSURE OF NO CONTRACT

2           I, Alison M. Wyman, Certified Court
Reporter, do hereby disclose pursuant to Article 10.B.
3  of the Rules and Regulations of the Board of Court
Reporting of the Judicial Council of Georgia that I am
4  a Georgia Certified Court Reporter; I was contacted by
the party taking the deposition to provide court
5  reporting services for this deposition; I will not be
taking this deposition under any contract that is
6  prohibited by O.C.G.A. 15-14-37(a) and (b) or Article
7.C. of the Rules and Regulations of the Board; and I
7  am not disqualified for a relationship of interest
under O.C.G.A. 9-11-28(c).
8           There is no contract to provide reporting
services between myself or any person with whom I have
9  a principal and agency relationship nor any attorney
at law in this action, party to this action, or party
10 having a financial interest in this action.  Any and
all financial arrangements beyond my usual and
11 customary rates have been disclosed and offered to all
parties.

12

13

14

15

16

17

18    _____

19    Alison M. Wyman

20    Certified Court Reporter

21    Certificate No. 2529

22

23

24

25

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 29

1    CASE:  Donna Rowell v. The Kroger Co., et al.

2    NAME OF WITNESS:   Mike Smith

3         The preceding deposition was taken

4    in the matter, on the date and at the time and

5    place set out on the title page hereof.

6

7         It was requested that the deposition

8    be taken by the reporter and that same be

9    reduced to typewritten form.

10

11        It was agreed by and between counsel

12   and the parties that the deponent will read and

13   sign the transcript of said deposition.

14

15        Said jurat is to be returned within

16   30 days following receipt of the transcript to

17   the following address:

18

19        Elizabeth Gallo Court Reporting, LLC

20        2900 Chamblee Tucker Road

21        Building 13, First Floor

22        Atlanta, Georgia 30341

23

24

25

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 30

1   NAME OF CASE:       Donna Rowell v. The Kroger Co., et al.
    DATE OF DEPOSITION: 03/10/2016
2   NAME OF WITNESS:    Mike Smith
3   EGCR Job No.:       30281
4                    CERTIFICATE
5        Before me this day personally
    appeared MIKE SMITH, who, being duly
6   sworn, states that the foregoing transcript of
    his/her deposition, taken in the matter, on
7   the date and at the time and place set out on
    the title page hereof, constitutes a true and
8   accurate transcript of said deposition.
9                          _____
10                         MIKE SMITH
11       SUBSCRIBED and SWORN to before me
12  this _____ day of _____ 20____.
13  in the jurisdiction aforesaid.
14

    _____    _____
15  My Commission Expires       Notary Public
16      STATE OF _____
17      COUNTY/CITY OF _____
18
19      []    No changes made to the Errata Sheet;
20  therefore, I am returning only this signed,
21  notarized certificate.
22      []    I am returning this signed,
23  notarized certificate and Errata Sheet with
24  changes noted.
25

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 31

1              Errata Sheet

2    NAME OF CASE:      Donna Rowell v. The Kroger Co., et al.

3    DATE OF DEPOSITION: 03/10/2016

4    NAME OF WITNESS:   Mike Smith

5    Reason Codes:  1. To clarify the record

6                   2. To correct transcription errors

7                   3. Other

       _____

8      _____

9    Page _____ Line _____ Reason _____

10   From _____ to _____

11   Page _____ Line _____ Reason _____

12   From _____ to _____

13   Page _____ Line _____ Reason _____

14   From _____ to _____

15   Page _____ Line _____ Reason _____

16   From _____ to _____

17   Page _____ Line _____ Reason _____

18   From _____ to _____

19   Page _____ Line _____ Reason _____

20   From _____ to _____

21   Page _____ Line _____ Reason _____

22   From _____ to _____

23

     SIGNATURE:_____ DATE:_____

24          Mike Smith

25

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

Page 32

1               Errata Sheet

2   NAME OF CASE:     Donna Rowell v. The Kroger Co., et al.

3   DATE OF DEPOSITION: 03/10/2016

4   NAME OF WITNESS:  Mike Smith

5   Reason Codes:  1. To clarify the record

6                 2. To correct transcription errors

7                 3. Other

       _____

8   _____

9   Page _____ Line _____ Reason _____

10  From _____ to _____

11  Page _____ Line _____ Reason _____

12  From _____ to _____

13  Page _____ Line _____ Reason _____

14  From _____ to _____

15  Page _____ Line _____ Reason _____

16  From _____ to _____

17  Page _____ Line _____ Reason _____

18  From _____ to _____

19  Page _____ Line _____ Reason _____

20  From _____ to _____

21  Page _____ Line _____ Reason _____

22  From _____ to _____

23

   SIGNATURE:_____DATE:_____

24       Mike Smith

25



Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

**Exhibits**

**Plaintiff's Exhibit 02**
3:9,11 11:4,5,6,7,11,18,
19 19:10

**1**

**13** 6:11
**15** 13:8,14
**18** 20:14,17
**19** 11:18 19:10 20:12

**2**

**2** 11:4,6,7,11,19 19:10
**2014** 4:13 5:5,11 6:23
**29** 5:1 14:16

**3**

**30** 12:25 13:11
**30th** 4:13 5:11 6:23

**4**

**4** 15:16
**45** 13:2,6
**4:23** 25:25

**5**

**5** 15:16

**6**

**6** 15:16
**618** 5:1 9:8 14:9,13

**A**

**access** 16:18
**accident** 4:12 6:22 7:1,
3,16 8:2 9:23 10:2,21

14:22 21:13,14,18,21
22:16 24:4
**accidents** 7:23
**accompanied** 10:2
**actual** 10:21 22:22
**address** 21:23
**afternoon** 4:6
**agree** 22:1
**ahead** 17:12
**aisle** 7:4 8:5 11:18
19:10 20:12,14,17,18,
19 21:2,6,7
**Albert** 4:17
**allowed** 17:4
**ambulance** 23:1
**angle** 11:9
**anyplace** 11:18
**Apparently** 8:5
**appeared** 22:9
**Approximately** 5:14
**April** 4:13 5:11 6:23
**area** 16:1,3,13,21 17:5,
20 18:17,19 20:1
**areas** 15:23
**aspect** 6:19
**assigned** 6:1
**assistant** 5:22,24
**associates** 23:23
**assumption** 25:6
**automatically** 14:2
**aware** 6:22

**B**

**back** 4:12 5:15 11:22
19:14 24:24 25:1
**background** 20:9,10
**Barbara** 23:19,21
**based** 11:17 14:22 19:8

22:13
**basically** 5:22 17:12
**bell** 13:2
**big** 15:15
**block** 16:20
**blocking** 16:12
**blurry** 11:24
**brand-new** 5:2
**briefly** 4:15
**burry** 11:21

**C**

**cabinet** 7:17,19
**call** 12:18,20 23:1,6
**called** 23:2
**calls** 13:17
**camera** 10:24 11:9,19
13:23,25 19:14 20:2,21,
22 21:2
**cameras** 10:23 13:22
20:11 21:1
**capture** 10:23
**cart** 19:5,6,11,25 20:15
**case** 4:10 7:23 21:15
24:6 25:15
**cases** 8:8 9:15 11:14
15:1,7,11 16:14,21
17:21 21:10 25:2
**caused** 8:7
**caution** 17:17,18
**champion** 6:4,6
**chances** 24:9
**charge** 24:14
**circle** 19:22
**circumstance** 9:17
**circumstances** 7:14
**clarify** 7:8 8:18
**clean** 11:6

**co-manager** 4:22 5:17,
18,19,22 9:5,6
**College** 5:7,8,9 10:11
14:17
**command** 14:5
**Company** 4:9
**completed** 21:13,14
**completely** 16:13
**concluded** 25:25
**condensation** 15:11
**cone** 19:3,6 22:2,12
**cones** 15:2,14 17:3
18:18 19:1
**congratulating** 6:14
**contact** 15:24 16:4,6,
11
**continue** 17:4
**continued** 16:21
**continues** 17:2
**contributed** 15:1
**control** 16:14 21:9
**copy** 11:6 12:15
**corporation** 4:19
**correct** 4:20 5:11,12
10:13,14,22,25 11:25
12:1,7,17,19 16:3 18:20
20:12,13,16
**counseling** 6:14
**Court** 4:11
**covered** 8:3
**covering** 18:19
**cream** 11:14,15 17:13
**CROSS-
EXAMINATION** 4:4
**cue** 12:4,10
**current** 12:25 14:13
**customer** 19:7 21:22
22:1,15 23:3
**customers** 15:10
17:11,12

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

**D**

dairy 7:4 8:4 11:13

day 18:6,21 24:6

days 12:25 13:8,11

departments 5:25 6:1

depends 25:10

depict 11:12

depicts 10:21

deposed 4:2

deposition 11:5,6 19:21 25:25

description 21:23

digital 12:4

direct 11:3

discuss 7:19,24

discussed 7:20 8:2

discussion 16:12,17

discussions 14:23

District 4:10,11

Donna 4:9 6:23 14:6

doors 17:23

duly 4:2

**E**

easy 14:1

email 12:20

emanating 18:18

end 6:1

enter 17:18

entered 7:18

estimate 18:5

etran 25:24

excuse 5:9

Exhibit 11:4,5,7,11,18 19:10

exhibits 11:3

expectation 17:11

experience 11:17 22:14

**F**

fact 10:21 22:1,3,20 25:4

facts 6:15 22:22,23

failing 12:10

fails 12:8

fair 10:19 11:16,19 18:19 19:12 25:8

fall 4:12 7:15 8:4 9:11, 15 10:11 12:5 14:18,22 18:22 24:7

familiar 10:24

father 19:14

fax 9:22

feet 15:16

fell 7:3 14:24

female 9:2,3

figures 19:15

file 7:17,18 9:20

filed 7:16

filing 7:17,18

fill 22:15

find 25:15

floor 16:8

footage 10:20 13:19,21

forget 12:16

form 21:4 25:17

forward 14:16

freezer 8:8 9:15

front 6:1 11:21

frozen 7:3 8:4 11:14 21:7

full 4:15

**G**

Gates 7:7,11 8:16 9:16 18:25 21:16 22:6 23:12

gathered 18:15

generally 10:5 12:14 13:20 24:10

Georgia 4:11

give 4:15

good 4:6,7,8

guess 15:10 16:18 17:8,20 18:4 22:5

**H**

half 5:2,3,14

happen 13:19

happened 7:23,25 8:3 21:24 22:20 23:9

happening 16:7

hard 19:15 20:7

Highway 5:1 14:16

hit 19:3,6

holding 6:9

hour 10:17 12:5,6 13:23,24,25

hurt 22:16,25

**I**

ice 11:14,15 17:13

image 11:25

important 22:3 25:15

incident 7:21 23:8,19 25:16

inform 23:4

information 21:22 25:14

informed 24:16

involved 9:9 21:17

involvement 6:3

involving 6:23 9:15

issues 14:25 17:22

**J**

James 4:8

job 6:18 9:25

JONES 12:11 15:5 16:22,24 17:6,14 20:4 21:4 22:4,10,19 25:9, 17,20,23

June 5:5

**K**

Kelley 5:19

kind 11:21

knew 14:20

knowledge 14:23 16:6 19:9

knowledgeable 9:20

Kroger 4:9,19

**L**

L-e-s-l-e-e 8:25

lady 6:23

leak 15:12 16:21

leaking 8:8 15:7,11,18, 19,22 16:3 17:21 21:9 24:6

learn 7:5

leaving 8:20

left-hand 11:14

Leslee 8:22 9:3

letter 19:22 20:5,7

letting 7:15

liability 23:5

limit 16:18

long 4:23 5:3,13 8:21

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

12:21 15:6,8,16,17
18:3,9 21:9

**Loren** 4:5,8 12:12 15:6
17:1,10,19 20:5 21:8
22:8,13,24 25:13,19

**lost** 20:9

**lot** 9:19 10:7 25:10

---

**M**

**maintaining** 6:3,16

**make** 6:8 10:20 12:5,18
16:19 23:11

**male** 9:1

**manager** 5:21,22,24
7:6 10:5 12:3,8 24:14

**managers** 14:23 25:11

**mark** 11:5

**marked** 11:4 19:20,21

**matter** 4:9

**means** 6:7,8

**meet** 14:8

**meeting** 7:21 8:2,10
24:17

**meetings** 6:9 7:19
8:13,17 9:10

**met** 14:6

**Michael** 4:17

**Mike** 4:1 7:7,11 21:16
23:11

**mine** 25:24

**Minish** 5:20 7:6,9 8:12
9:16 10:19 18:25 19:2,
21 23:8 24:10

**missing** 13:18

**mistaken** 21:16 24:1

**month** 18:6,8

**months** 8:19 18:1,2,7

**moving** 19:1

---

**N**

**named** 6:23

**needed** 16:20

**nonetheless** 11:24
12:18

**Northern** 4:11

**notified** 24:1,2,3

**notify** 24:3

**novelty** 11:15

**number** 13:2,21 21:23

**numbers** 14:12

---

**O**

**object** 15:13

**Objection** 12:11 15:5
16:22 17:6,14 20:4 21:4
22:4,10,19 25:9,17

**obligation** 12:2

**observations** 6:13

**occurred** 4:12 14:18
18:22 25:16

**office** 9:21

**operation** 6:17

**opinion** 22:22 25:11

**order** 13:24 15:9

**oversee** 6:8

**Oversees** 5:25

---

**P**

**p.m.** 25:25

**Park** 5:7

**part** 6:18

**pending** 4:10

**people** 6:14 17:4 18:13

**peril** 17:13

**period** 6:9,10 7:23 8:21

---

**periods** 6:11

**person** 7:24 11:25
20:14 23:16

**personal** 14:22

**phone** 21:23

**photograph** 19:20

**photographs** 24:13,25
25:7

**physical** 21:23

**pictures** 24:18

**place** 6:22

**policy** 10:10,12 12:3
21:20 24:13

**position** 4:21 5:15,16,
19,20 9:4

**possibility** 18:18 23:24

**practice** 24:25

**present** 7:2 8:9,12,16
17:7,9 22:12

**preserve** 12:10 13:8,
10,24

**preserved** 10:12,16
12:21

**preserves** 12:3 14:2

**preserving** 10:1,18

**pretty** 13:12 14:1

**previous** 11:4 19:20

**previously** 11:4

**primarily** 6:20

**printout** 7:22

**prior** 8:19

**problems** 14:10 15:7

**procedure** 22:24

**proceed** 17:16

**product** 16:18

**program** 14:1,4

**proper** 12:10

**protect** 15:9

**protocols** 22:14

---

**protrude** 15:23

**push** 14:4

**pushed** 22:2

**put** 6:12 14:16 15:13,14
17:15 22:11,21,23

---

**Q**

**question** 15:21

**questions** 4:14 25:19,
20

---

**R**

**read** 25:23

**reason** 17:20

**reasonable** 18:5

**recall** 7:10 8:11,14
12:23 13:6 14:11,20
15:8 17:22,23 18:3,23
19:16 20:23,25 21:7,11
23:10,12,13,21 24:9

**recommendation**
16:20

**record** 14:5

**relates** 13:2

**relayed** 22:6

**remember** 7:10 13:21

**remembered** 8:19

**reminder** 12:14

**repaired** 21:12

**repercussions** 12:9,
13

**rephrase** 15:21

**report** 7:16 9:23 10:2,6
21:13,14,18 22:9,21
24:4,11

**reports** 21:21 22:15

**request** 23:4

**requests** 23:4

**required** 24:19

Elizabeth Gallo
COURT REPORTING, LLC
3
www.GeorgiaReporting.com/Schedule
404.389.1155

Donna Rowell v. The Kroger Co., et al.
Mike Smith

30(b)(6)
March 10, 2016

requirement 24:24

respect 17:11

responded 7:2

responsibilities 10:1

responsibility 6:18

responsible 10:4

reviewing 21:17

right-hand 11:13

ring 13:2

Rowell 4:9 6:23 9:15 14:6,10 19:1,7

**S**

safe 6:15

safety 6:3,4,5,12,13,17 7:19,21 8:2,9,13,17,21 9:10,12 15:14 22:2 24:17

scan 9:21

scene 24:15

Sedgwick 9:21 12:14 13:17

send 12:14,16,17 13:20

set 20:2

shopper 14:9

shopping 20:15

shows 11:19

side 11:13,14

sign 25:23

signs 17:15

similarly 11:5

sir 4:8 13:9 20:18

situated 21:2

slash 7:4 8:4

slip 4:12 7:15 8:4 9:11, 14 10:11 12:5 14:18,22 18:22 24:7

slipped 7:3

slipping 15:10

Smith 4:1,6,17,18 8:22 25:21

Smith's 9:4

soak 15:14,22

soaks 15:19,24

sock 15:13,15,18 16:2, 9

socks 17:3

someone's 11:17 22:25

sort 6:2 12:9

speaking 23:12,22

specific 7:20 23:8

specifically 5:4 8:1 18:17

spelled 8:25

spoken 23:7,19

statement 11:20 18:19 19:13 25:8

States 4:10

Station 5:8,9 10:11 14:17

stepped 18:16

stop 15:18,19 17:3

store 4:25 5:1,2,4,7,11, 21 6:3,8,17 9:7,8 10:11, 25 11:9,22,23 14:13,17 15:9 19:15 20:11 22:25

stores 21:3

stuff 19:23

submit 9:21

submits 10:6

substance 14:25

suggest 23:1,3

supposed 21:21 22:17 24:17,18

surface 8:5,7

surrounding 7:14 9:17 24:15

surveillance 19:9 24:21,24

suspicious 25:3,7

sworn 4:2

system 10:25 12:4,23 13:3,8,10,12 19:9

**T**

taking 23:5

talked 23:17

talking 20:5,21

task 14:1

taught 22:15

team 6:13 8:21 9:12

telling 9:18

terms 12:2

testified 4:2

thing 19:2

Thirteen 4:24

thought 8:23 25:3

tied 24:12

tile 16:5,7 17:3 18:11,14

time 8:22 9:22 18:1 24:14,19

times 9:19 13:16 25:10

told 15:3 19:2 23:15

topics 6:12

training 6:18,20

transferred 8:20 21:12

tube-like 15:13

Turner 23:18,20,21

type 11:8

typical 24:25

typically 8:12 10:10 21:1,3

**U**

Uh-huh 18:12

underneath 18:10,14

understanding 4:18 5:7 24:19

uniformity 11:2

unit 5:21

United 4:10

unsafe 6:15

**V**

video 10:1,12,15 12:3, 4,10,16,18,21 13:8,11, 18 24:20,21,24

visible 17:16 19:12

**W**

walk 15:23 17:12

walking 11:17,25 17:5 19:10 20:14

warning 22:2

water 15:14,20,22,24 16:4,10 17:2,7,8 18:10, 14,15,17 24:6

wearing 21:24

weeks 6:10 18:6

wet 8:5,7 16:2

work 4:19 12:24 14:3

worked 4:23 19:9

working 18:21

write 22:17 24:10

**Y**

year 5:2,3 6:11 24:16

years 4:24 5:14 19:18

Elizabeth Gallo
COURT REPORTING, LLC